# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.R. and J.R.**

**No. 18-1065** (Kanawha County 17-JA-220 and 17-JA-221)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.R., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's November 7, 2018, order terminating her parental rights to M.R. and J.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), W. Jesse Forbes, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first providing her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2017, the DHHR filed a child abuse and neglect petition alleging that petitioner failed to provide the children with necessary food, clothing, supervision, and housing. According to the DHHR, the children were found inside the home in separate "enclosures" made of plywood, which were locked from the outside. Inside two-year-old J.R.'s enclosure, the DHHR found a bed with no mattress, a few toys, and a plate of food on the floor. The DHHR alleged that J.R. was naked, the enclosure smelled of urine, and piles of fecal matter were observed on the floor. The DHHR alleged that five-year-old M.R.'s enclosure was similarly situated with fecal matter on the floor and smeared on the walls and a strong odor of urine. M.R. was also found naked, lying on the floor as his enclosure did not contain a bed. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

The circuit court held an adjudicatory hearing in July of 2017, and petitioner stipulated that she subjected her children to "unsafe living conditions, [her] untreated mental illness, and domestic violence."[2] The circuit court found that petitioner was an abusing parent and that the children were abused and neglected children. The circuit court also ordered that petitioner participate in a psychological evaluation and in all recommendations contained therein.[3] The circuit court denied petitioner's motion for supervised visitation until the evaluation was completed. In February of 2018, petitioner moved for an opportunity to participate in therapy to address a diagnosis resulting from the psychological examination, and the circuit court granted that motion. Petitioner also moved for supervised visitations with the children, which the circuit court denied.

In March of 2018, the circuit court held a dispositional hearing and heard testimony from petitioner's parental fitness evaluator that petitioner's prognosis for improvement was poor. The evaluator explained that, during the evaluation in September of 2017, petitioner "emphatically stated" that she never put the children in the enclosures, "that this never happened." Further, the evaluator noted that petitioner not only had untreated mental health issues, but she also "has a history of noncompliance with mental health treatment." The evaluator testified that, according to petitioner's responses on a personality assessment, her motivation for treatment was "very low." Finally, the evaluator explained that she did not believe petitioner would "attain minimally adequate parenting in the allotted time usually given for cases of this type." The circuit court continued the dispositional hearing to hear further evidence.

The circuit court held the final dispositional hearing in August of 2018.[4] Petitioner's therapist testified that she had been treating petitioner for anxiety and depression for less than two months and had met with petitioner for less than ten hours total. The therapist testified that she did not see the enclosures that the children were kept in and that petitioner did not reveal to her that she previously admitted to law enforcement that she locked the children inside the enclosures. Petitioner's parenting educator stated that petitioner "minimizes the events that took place." As an example, the educator testified that petitioner stated that Child Protective Services showed up "on a bad day." The educator clarified that petitioner did not seek therapy until twelve months after the removal of the children and only after the parental fitness evaluation was completed. Petitioner admitted that the enclosures were unsafe and that, although it took several months, she recognized why the conditions were not healthy for the children. Petitioner also testified she was currently

---

[2]The DHHR amended the petition in July of 2017 to include petitioner's oldest daughter, M.S, as an infant respondent. However, M.S. reached the age of majority during the proceedings and, therefore, is not at issue in this appeal.

[3]The proceedings were delayed several times thereafter while the parties awaited the results of this evaluation, which were provided in January of 2018.

[4]The circuit court continued an earlier dispositional hearing in July of 2018 upon petitioner's motion due to the unavailability of a witness.

employed and participating in parenting and adult life skills classes and therapy, but did not have her own housing.

Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the foreseeable future based on petitioner's continued minimization of the conditions which led to the filing of the petition. The circuit court found that petitioner failed to follow through with a reasonable family case plan designed to reduce or prevent the abuse and neglect of the children. Further, the circuit court found the best interests of the children required termination of petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights by its November 7, 2018, order. Petitioner now appeals that order.[5]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first providing her an improvement period. Petitioner asserts that she demonstrated an ability to care for the children "for the years preceding the filing of the petition." Further, petitioner argues that she proved that she was likely to fully participate in an improvement period because she was able to find employment, participate in therapy and classes, and maintain a relationship with her older daughter during the proceedings. However, petitioner's argument is unpersuasive because she ignores her failure to acknowledge her responsibility for the conditions of abuse and neglect.

West Virginia Code § 49-4-610(2)(B) provides that a circuit court may grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re*

---

[5]The father's parental rights were also terminated below. According to the parties, the permanency plan for the children is adoption in their respective foster placements.

*M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). On appeal, petitioner argues that she was "continually faulted for not acknowledging her responsibility for the conditions and for minimizing the conditions causing the removal." However, this Court has recognized that "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Likewise, the parental fitness evaluator determined that petitioner's failure to acknowledge these issues and her insistent denial that these conditions existed created a barrier for treatment.[6] It is clear that petitioner's failure to acknowledge the situation and then her later minimization of the conditions that led to the removal created a situation in which the conditions could not be corrected. As shown above, the circuit court has the discretion to deny a motion for an improvement period, and we find no abuse of discretion in this case.

Further, this evidence supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Even as petitioner participated in services designed to correct the conditions of abuse and neglect, she continued to minimize the circumstances in which the children were found. Clearly, petitioner was not responding to the services that she was participating in, which was consistent with the psychologist's "poor" prognosis for parental improvement. Therefore, the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future is supported by the record. Similarly, the termination was necessary for the welfare of the children because petitioner did not accept responsibility for the danger in which she placed the children. Simply put, the children would be at risk if returned to her care.

This Court has held as follows:

---

[6]Petitioner argues that her case did not include any "aggravated circumstances" as enumerated in West Virginia Code § 49-4-604(b)(7), but that the parties proceeded as though these circumstances existed. Arguably, however, the conditions in this case could be considered "chronic abuse," which is an "aggravated circumstance" included in West Virginia Code § 49-4-604(b)(7). Regardless, petitioner received services during the proceedings, which a finding of "aggravated circumstances" would have prevented, and, therefore, petitioner's argument lacks merit.

4

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court's findings that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected and that termination was necessary for the welfare of the children are supported by the record. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 7, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: May 24, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

5